## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 22-20622-CIV-ALTONAGA/Torres

RAY O'NEILL, *et al.*,

      Plaintiffs,

v.

EMILY B. CATE, *et al.*,

      Defendants.

_____/

### <u>ORDER</u>

**THIS CAUSE** comes before the Court on Defendants, the United States Fish and Wildlife Service ("FWS") and Emily B. Cate's Motion to Dismiss Plaintiffs' Supplemental Complaint [ECF No. 27], filed on July 13, 2022. Plaintiffs, Ray O'Neill and the Organization of Professional Aviculturists, Inc. ("OPA"), filed a Response in Opposition [ECF No. 30]; to which Defendants filed a Reply [ECF No. 34]. The Court has carefully considered the parties' written submissions, the record, and applicable law. For the following reasons, Defendants' Motion is granted.

### I. BACKGROUND

This case arises from Plaintiffs' efforts to import 150 African Grey Parrots ("the Parrots") into the United States from South Africa. (*See generally* Supp. Compl. [ECF No. 23]). Because of the Parrots' legally protected status, Plaintiffs require approval from FWS to import the Parrots. (*See* Mot. 13–17).[1] Plaintiffs began the process of applying for authorization on March 18, 2019. (*See* Supp. Compl. ¶ 36). FWS has thus far withheld approval. (*See id.* ¶¶ 84–85). Plaintiffs now challenge this inaction as a violation of the Administrative Procedure Act ("APA") and ask the

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

Court to compel Defendants, FWS and Cate, a biologist for the Division of Management Authority and the officer in charge of adjudicating Plaintiffs' request for a permit, to adjudicate their application. (*See id.* ¶ 9, 16–17).

Grey Parrots are a protected species under the Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES"), a multilateral treaty to which the United States is a party. *See* 16 U.S.C. § 4903(1). CITES protects a wide range of species, but the relevant provisions here are implemented by the Wild Bird Conservation Act ("WBCA"), 16 U.S.C. sections 4901–16. (*See* Supp. Compl. ¶ 11). While CITES provides a floor as to the required protections that signatory countries must give to covered species, countries are permitted to enact stricter protective measures if they so choose. (*See* Mot. 13 n.1).[2] Under CITES, Grey Parrots are designated as an "Appendix I" species, which means they are afforded the highest levels of protections. (*See id*. 11, 14–15). "[A]s Appendix-I wildlife, legal commercial trade of [G]rey [P]arrots is limited to qualifying birds bred in captivity at registered facilities[.]" (*Id.* 18 (alterations added and citations omitted)).

O'Neill is a citizen of South Africa and Great Britain and an aviculturist. (*See* Supp. Compl. ¶ 6). Aviculturists are involved in "caring, breeding, or promoting the continued existence of avian species." (*Id.* ¶ 7). OPA is a non-profit organization that "represents, supports, and acts on behalf of professional aviculturists." (*Id.*). Together, Plaintiffs seek authorization to import the Parrots into the United States. (*See id*. ¶¶ 7–9).

Defendant, FWS, has authority from the Secretary of the Interior to implement and maintain the United States' compliance with CITES. (*See* Mot. 13 n.1 (citations omitted)). Under this authority, FWS is responsible for reviewing applications from individuals seeking to import

---

[2] The WBCA is an example of the United States going above and beyond the basic protections that CITES compels. (*See* Mot. 13 n.1.)

protected species and issuing permits to do so when appropriate. (*See id*. 16). FWS promulgated the regulations governing the import of protected birds at 50 C.F.R. part 15. (*See id*.). The specific requirements for the import permit that Plaintiffs seek are found at section 15.24. (*See id*. 16–17). Cate is a biologist and officer of FWS who interacted with Plaintiffs during their efforts to obtain an import permit. (*See* Supp. Compl. ¶ 9).

Plaintiffs seek to import the Parrots to populate their South Florida-based cooperative breeding program ("CBP"). (*See id.* ¶ 8). Populating an approved CBP is one of the few exceptions by which a species protected under CITES and the WBCA may be legally imported into the United States. (*See* Mot. 15–16 (citing 16 U.S.C. § 4911(4); 50 C.F.R. §§ 15.24, 15.26; other citations omitted)). Once applicants receive approval to create a CBP, they must then submit a separate application and receive separate approval to import the protected species for their CBP. (*See* Resp. 7–8 (describing the "two steps" to create and populate a CBP)).

FWS has already approved Plaintiffs' CBP application. (*See* Supp. Compl. ¶ 6; Resp. 11; Defendants' Notice of Filing the Administrative Record, Ex. C, Administrative Record [ECF No. 17-3] (hereinafter "R.") 23). Plaintiffs originally sought approval to import up to 4,000 Grey Parrots for the CBP. (*See* R. 5). FWS declined, approving only 150 captive-bred Parrots. (*See id*. 24).

Plaintiffs now want to import the 150 Parrots. (*See id*. 33–50). They submitted their import application in April 2021 (*see id.*), which FWS later designated as request CS00297 (the "Application"). (*See id*. 51; Supp. Compl. ¶ 45). FWS's disposition of that Application is the basis of this suit.

After the initial receipt of the Application, FWS informed Plaintiffs that they had not provided sufficient information, rendering their Application "incomplete." (R. 51). FWS

requested further information from Plaintiffs regarding the origin and history of each Parrot that Plaintiffs sought to import, including "signed breeder's statement[s][,] . . . [d]ocumentation showing how the bird(s) were acquired, . . . and . . . [d]ocumentation on the parental stock of the requested birds[.]" (*Id.* (alterations added; italics omitted)). Without this information, FWS could not move forward on the Application. (*See id.*). Further, FWS informed Plaintiffs that they had 45 days to correct the discrepancy and provide the requested information, else the Application would be deemed "abandoned and administratively closed." (*Id.*).

Plaintiffs timely responded to the request with *some* of FWS's requested information. (*See id.* 53–67). This included "some acquisition documents" but, importantly, "no documentation for the [Parrots'] parental stock." (Reply 10 (alteration added)). Rather than provide the complete information FWS requested, Plaintiffs submitted sworn statements "explaining" that some of the information was not otherwise available. (Resp. 10).

Plaintiffs contend that this sufficed to "render[] the [A]pplication complete." (*Id.* 17 (alterations added)). FWS disagrees, insisting that Plaintiffs provided only "a small portion of the information and documentation requested[.]" (R. 69 (alteration added)). Because "all of the requested information [was not received] within the allocated time, [the Application] was considered . . . incomplete[,] . . . abandoned[,] and administratively closed." (*Id.* (alterations added)). FWS clarified that Plaintiffs could try again if they wanted, but they would have to "submit a new application" to resume the matter. (*Id.*).[3]

---

[3] Plaintiffs submitted another application, which FWS denied. (*See* Supp. Compl. ¶¶ 65, 73). The Supplemental Complaint includes three claims concerning this second application (*see id.* ¶¶ 90–102), but Plaintiffs voluntarily withdrew these claims in their Response to Defendants' Motion (*see* Resp. 22). Accordingly, the Court does not consider them. *See United States v. Dougherty*, 754 F.3d 1353, 1358 (11th Cir. 2014) ("This Court will not review claims that a party has abandoned." (citation omitted)). The remaining two claims — the only ones that remain after the Response — concern Plaintiffs' initial Application. (*See* Resp. 22).

Plaintiffs disagreed with this assessment and timely responded to FWS's abandonment determination with a request for internal administrative review. (*See* R. 72–77). The first step of this review is a "request for reconsideration." 50 C.F.R. § 13.29(a). FWS declined to reconsider, however, because "pursuant to [section] 13.29(a)(1)[,] . . . a request for reconsideration can only be submitted when an applicant . . . has received a written notice of denial." (R. 83 (alterations added)). According to FWS, Plaintiffs' Application "was not denied[;] [i]t was abandoned because it was deemed too incomplete to process." (*Id.* (alterations added)). Plaintiffs, undeterred, attempted to initiate the second, and final, level of internal administrative review provided by FWS, under section 13.29(e). (*See* R. 86–88). To date, FWS has not acted on this appeal (*see* Supp. Compl. ¶ 63), because it believes that "administrative review is available only for permit applications that receive written denials" (Mot. 26–27 (citing 50 C.F.R. § 13.29(a)(1))).

Plaintiffs filed this suit seeking injunctive and declaratory relief under 5 U.S.C. section 706(1). They request an order compelling FWS to adjudicate the appeal of the Application, or a declaration that FWS's determination of the Application as "abandoned" was in violation of 5 U.S.C. section 706(2)(A). (*See* Supp. Compl. ¶¶ 85, 89; Resp. 25). Plaintiffs present two claims for relief. In their first claim, they allege that FWS has unlawfully or unreasonably delayed action on Plaintiffs' appeal of FWS's conclusion that Plaintiffs abandoned their Application. (*See* Supp. Compl. ¶¶ 82–85). In the second claim, they allege that FWS lacks the authority to deem the Application "administratively closed and abandoned." (*Id*. ¶ 89).

FWS asks that the Court dismiss the Supplemental Complaint. (*See generally* Mot.). According to FWS, the first claim should be dismissed because there is no agency action that has been "unlawfully withheld" in violation of 5 U.S.C. section 706(1). (*See* Mot. 26–27). FWS asserts the second claim should be dismissed because FWS's decision to deem the Application

"abandoned" was not arbitrary and capricious, in violation of 5 U.S.C. section 706(2)(A). (*See* Mot. 24, 26; Reply 9–10). Finally, FWS argues that both claims against Cate should be dismissed because she is not an "appropriate officer" permitted to be sued under 5 U.S.C. section 703. (*See* Mot. 39–41).

Plaintiffs defend the first claim by arguing that FWS's refusal to provide administrative review of the Application violated 5 U.S.C. section 706(1). (*See* Resp. 12, 19–20). In the alternative, Plaintiffs argue that FWS misinterpreted and misapplied its own regulations when it deemed the Application "abandoned," in violation of 5 U.S.C. section 706(2)(A). (*See* Resp. 14, 19–20). Finally, Plaintiffs argue that Cate is an appropriate defendant under 5 U.S.C. section 703. (*See* Resp. 22).

## II. LEGAL STANDARDS

Before turning to the merits, the Court outlines several standards that govern its review of the issues presented.

### A. Final Agency Action and Subject Matter Jurisdiction

Agency action is subject to judicial review when "made reviewable by statute" and when it is a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. In contrast, "[a] preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." *Id.* (alteration added). Agency action is "final" — and thus reviewable — when it "mark[s] the consummation of the agency's decisionmaking process" and is an action "by which rights or obligations have been determined, or from which legal consequences will flow." *LabMD, Inc. v. F.T.C.*, 776 F.3d 1275, 1278 (11th Cir. 2015) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)) (alteration added).

The Court lacks jurisdiction when the administrative action at issue is not final within the meaning of section 704. *See id.* at 1278–79.

### B. Scope of Review of Agency Action Under Rule 12(b)(6)

Ordinarily, a court considering a Rule 12(b)(6) motion must construe the complaint in the light most favorable to the plaintiff and take its factual allegations as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)). But when a complaint seeks review of agency action under the APA, "[t]he entire case on review is a question of law," and the reviewing district court sits not as a finder of fact but "as an appellate court[,]" *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993) (alterations added; citation omitted). An APA plaintiff's "complaint, properly read, actually presents no factual allegations, but rather only arguments about the legal conclusion to be drawn about the agency action." *Id.* In other words, where the review concerns whether agency action was arbitrary or capricious under the APA, "the sufficiency of the complaint is the question on the merits, and there is no real distinction . . . between the question presented on a 12(b)(6) motion and a motion for summary judgment." *Id.* (alteration added; footnote call number omitted).

That means the Court may go beyond the Supplemental Complaint's allegations and review "'the whole record,' which 'consists of all documents and materials directly or indirectly considered by agency decision-makers.'" *Herguan Univ. v. Immigration & Customs Enf't*, 258 F. Supp. 3d 1050, 1063–64 (N.D. Cal. 2017) (quoting *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989); other citation omitted). The Court thus reviews FWS's disposition of the Application under this more expansive scope, considering the entire administrative record.

### C. Claims Brought Under the APA

To prevail on a claim brought under 5 U.S.C. section 706(1), Plaintiffs must establish that "agency action" is being "unlawfully withheld or unreasonably delayed[.]" *Id.* (alteration added). "Section 706(1) empowers th[e] Court to compel an agency to perform a ministerial or non-discretionary act." *Arbesu v. Keisler*, No. 07-Civ-22914, 2008 WL 1914864, at *1 (S.D. Fla. Apr. 28, 2008) (citing *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63–64 (2004) (alteration added)). In other words, "a claim under [section] 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take.*" *Norton*, 542 U.S. at 64 (alteration added; emphasis in original).

On a claim brought under 5 U.S.C. section 706(2)(A), Plaintiffs must establish that FWS's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" *Id.* (alteration added); *see also Salmeron-Salmeron v. Spivey*, 926 F.3d 1283, 1286 (11th Cir. 2019). This standard is "exceedingly deferential[;] . . . [t]he [C]ourt's role is to ensure that the agency came to a rational conclusion, not to conduct its own investigation and substitute its own judgment for the administrative agency's decision." *Defenders of Wildlife v. U.S. Dep't of Navy*, 733 F.3d 1106, 1115 (11th Cir. 2013) (alterations added; citations and quotation marks omitted); *see also VHV Jewelers, LLC v. Wolf*, 17 F.4th 109, 114 (11th Cir. 2021). An agency's conclusion is considered rational so long as "the agency has 'considered the relevant factors and articulated a rational connection between the facts found and the choice made.'" *Fla. Keys Citizens Coal., Inc. v. U.S. Army Corps of Engineers*, 374 F. Supp. 2d 1116, 1126 (S.D. Fla. 2005) (quoting *Baltimore Gas & Elec. v. Natural Res. Def. Council*, 462 U.S. 87, 105 (1983)).

## III. DISCUSSION

FWS urges the Court to dismiss Plaintiffs' remaining claims under Rule 12(b)(6). FWS contends that its disposition of the Application — to deem it abandoned, administratively close it, and refuse to provide further administrative review — was all done "in accordance with [the] law." (Reply 1–2 (alteration added)). It further argues that Plaintiffs' subsequent statements regarding the Parrots' parental stock renders the original Application moot. (*See id.* 12–14). Should the claims survive, however, FWS argues that the claims against Cate should be dismissed because she is not an "appropriate officer" permitted to be sued under 5 U.S.C. section 703. (*See* Mot. 39–41).

Plaintiffs, by contrast, insist that FWS does not have the legal authority to administratively close abandoned applications and refuse to provide them with further administrative review; that the decision to deem the Application "incomplete" and "abandoned" was improper; and that the Application and related claims are not moot. (*See* Resp. 12, 14, 20). Should their claims proceed, Plaintiffs further assert that Cate remains a properly named Defendant under section 703. (*See id.* 22). Finally, Plaintiffs ask the Court to order FWS to conduct the administrative review of the decision on the Application and to declare that FWS's decision was arbitrary and capricious. (*See* Supp. Compl. 16–17).

To defeat FWS's Motion, Plaintiffs must demonstrate that FWS's decision regarding the Application was improper either because FWS lacked the legal authority to deem the Application abandoned, administratively close it, and not provide administrative review; or because the decision to do so was arbitrary and capricious. *See* 5 U.S.C. §§ 706(1), (2)(A). Plaintiffs have done neither. As such, the Supplemental Complaint is due to be dismissed.

**A. The Regulatory Framework**

FWS's relevant permitting procedures — which govern FWS's disposition of the Application — are described in 50 C.F.R. sections 15 and 13. Section 15 governs the specific import permitting procedures under the WBCA, such as those for the approval of CBPs and the import of species to populate those CBPs. (*See* Mot. 16). The application requirements for import permits related to a CBP, like the Application here, are governed by 50 C.F.R. section 15.24, which directs applicants to provide any information that FWS "may require" to make its decision. 50 C.F.R. § 15.24(a).

Applications for import permits are also subject to FWS's general permitting procedures at 50 C.F.R. section 13. Section 13.11(e) warns applicants of the penalties for "incomplete" applications. *See id*. § 13.11(e). Should an application be incomplete and not timely cured by the applicant, section 13.11 makes plain that FWS "will consider the application abandoned." *Id*.

FWS's internal administrative review of application decisions is governed by 50 C.F.R. section 13.29. Section 13.29 allows applicants to "request reconsideration" of a denied application, *so long as* FWS issues a "written notice of denial" rejecting the application. *Id.* § 13.29(a). Reconsideration must be requested "within 45 calendar days" of the original decision, and FWS must notify the applicant of the decision on reconsideration "within 45 days of the receipt of the request." *Id.* §§ 13.29(b)(2), (d). Applicants who "receive[] an adverse decision following submission of a request for reconsideration may" then appeal that decision to "the Regional Director for the region in which the issuing office is located[.]" *Id.* § 13.29(e) (alterations added). The appeal must be submitted "within 45 days" of the reconsideration decision, and FWS must notify the applicant of its decision on the appeal "within 45 calendar days of receipt of the appeal, unless extended for good cause and the appellant notified of the extension." *Id.* §§ 13.29(e), (f)(2).

## B. Final Agency Action

Before proceeding to the substance of Plaintiffs' APA claims, the Court examines whether it possesses the necessary jurisdiction to do so; meaning, whether what Plaintiffs' challenge here is "final agency action" reviewable under 5 U.S.C. section 704. In the Eleventh Circuit, whether the challenged agency action is "final" is a question of the Court's subject-matter jurisdiction. *See Canal A Media Holding, LLC v. United States Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1255 (11th Cir. 2020). Agency action is only considered "final" — and thus reviewable — when it "mark[s] the consummation of the agency's [] process" and is a decision from "which rights or obligations have been determined, or from which legal consequences will flow." *LabMD, Inc.*, 776 F.3d at 1278 (quoting *Bennett*, 520 U.S. at 177–78) (alterations added).

Here, the question of final agency action is straightforward. FWS, under its governing regulations, deemed the Application abandoned, and then administratively closed it and declined to provide further administrative review. (*See* Resp. 10–11; R. 69, 83). As a result, Plaintiffs were unable to import the Parrots. (*See generally* Resp. 2–3). That suffices to render FWS's action "final." 5 U.S.C. § 704; *see also LabMD, Inc.*, 776 F.3d at 1278.

## C. Plaintiffs' First Claim

In their first claim, Plaintiffs allege that FWS improperly declined to consider Plaintiffs' appeal of FWS's determination that they had abandoned the Application. (*See* Supp. Compl. ¶¶ 82–85). Plaintiffs ask the Court to compel adjudication of the appeal under 5 U.S.C. section 706(1). (*See id.*). While section 706(1) empowers courts to "compel agency action unlawfully withheld or unreasonably delayed[,]" 5 U.S.C. § 706(1) (alteration added), the Court is not persuaded that section 706(1) applies here.

The Supreme Court has held that "a claim under [section] 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton*, 542 U.S. at 64 (alteration added; emphasis in original).  FWS argues that it was not required to take any additional action here because the applicable "regulations do not provide for administrative review of abandonment determinations."  (Reply 6).  The Court agrees.

To start, the parties do not dispute that FWS has the "legal authority" — that is, authority under the relevant rules and regulations — to deem applications abandoned.  (*See* Resp. 14; Reply 7).  That is unsurprising.  The controlling regulation, 50 C.F.R. section 13.11, explicitly provides as much.  *See* 50 C.F.R. § 13.11(e) ("If we receive an incomplete . . . application . . . the issuing office will notify you of the deficiency.  If you fail to supply the correct information to complete the application . . . [FWS] will consider the application abandoned." (alterations added)).

To get around this fact, Plaintiffs try to distinguish the authority to deem applications abandoned, which they acknowledge FWS has, from the authority to administratively close abandoned applications.  (*See* Resp. 12–14).  Plaintiffs argue that because the phrase "administratively close" does not appear in the relevant regulations, FWS "could not have administratively closed [the Application]."  (*Id.* 13 (alteration added)).  This argument, while creative, does not persuade.

True, the exact phrase "administrative closure" does not appear in the regulations.  *See* 50 C.F.R. § 13.11(e).  But, as FWS points out, the administrative closure of applications is a procedural mechanism "used by the agency to manage its permit application docket" (Mot. 26) — much like the administrative closure of a case on the Court's own docket, *see Solis v. CitiMortgage, Inc.*, 700 F. App'x 965, 968–69 (11th Cir. 2017) (describing the judicial use of "administrative closure").  An administrative agency does not exceed its authority merely because

it uses an unenumerated procedural mechanism to exercise its enumerated authorities more efficiently. *See Merchant v. U.S. Dep't of Educ. Off. of C.R. Atlanta Div.*, No. 8:21-cv-195, 2021 WL 3738835, at *4 (M.D. Fla. Aug. 24, 2021), *aff'd as modified sub nom. Merchant v. U. S. Dep't of Educ. Off. of C.R. Atlanta Div.*, No. 21-13712, 2022 WL 15561847 (11th Cir. Oct. 28, 2022) (describing how the APA is not violated when an agency "merely changed a procedural aspect of the internal handling of administrative appeals" because that did "not change the agency's substantive evaluation standards" (citing *JEM Broad. Co. v. F.C.C.*, 22 F.3d 320, 327 (D.C. Cir. 1994))); *see also* 5 U.S.C. § 553(b)(3)(A) (exempting "rules of agency . . . procedure" from traditional notice-and-comment rulemaking (alteration added)).

And, FWS's administrative closure of abandoned applications has no substantive impact on the final disposition of the applications. Section 13.11(e) permits FWS to deem applications abandoned, and FWS's policy is to provide no further administrative review of those applications; at that point, the "administrative closure" of the application is simply a "ministerial act." (Reply 8 (describing the "administrative closure" of applications once "there is nothing left to do")). Indeed, should an applicant submit a new application after its original application is deemed "abandoned," FWS will generally not even transfer information between the two, and the applicant must instead "provide all the relevant information at the time the new application is submitted." (R. 69).

The inquiry does not end there. Plaintiffs' real issue with FWS's decision appears in their next argument: even if FWS may administratively close abandoned applications, this determination and closure are "in actuality a denial" because "there is no process by which [Plaintiffs] can ask [FWS] to reactive [sic] the file for adjudication." (Resp. 13 (alterations added)). In other words, Plaintiffs construe FWS's conclusion that the application is "abandoned"

as a "written notice of denial" sufficient to trigger FWS's duty to provide "reconsideration" of timely submitted requests under 50 C.F.R. section 13.29(a).  (*Id.* 12–13).

FWS takes a different view.  While section 13 expressly contemplates both written notices and abandonment determinations, it only grants applicants a "reconsideration" opportunity for the former.  *Compare* 50 C.F.R. § 13.29(a) *with id.* § 13.11(e).  The Court agrees.

Under 50 C.F.R. section 13.29(a), an applicant is required to first receive "a written notice of denial" of its application to be eligible for reconsideration.  *Id*.  And an applicant must then receive an "adverse decision" on its section 13.29(a) reconsideration request before being eligible to seek an appeal to the Director under 50 C.F.R. section 13.29(e).  *See id.* § 13.29(e) ("[Applicants] who receive[] an adverse decision following . . . a request for reconsideration may submit a written appeal . . . . An appeal must be submitted within 45 days of . . . the decision on . . . reconsideration." (alterations added)).  Here, no such adverse decision issued on Plaintiffs' Application.  FWS merely deemed it incomplete and abandoned, because it lacked the required information for FWS to be able to adequately assess Plaintiffs' request.  (*See* Mot. 26–27; R. 69).

FWS's authority to make the abandonment determination derived from section 13.11(e), *not* section 13.29(a).  *See* 50 C.F.R. § 13.11(e).  Section 13.11(e) does not afford Plaintiffs an opportunity for reconsideration, so FWS has no obligation to consider Plaintiffs' appeal.

Plaintiffs, once more blurring the lines between sections 13.29(a) and 13.11(e), assert that Defendant's decision, while nominally a determination that the Application was "too incomplete to process[]" (R. 83 (alteration added)), was "*functionally* . . . a denial" (Resp. 11 (alteration and emphasis added)).  This argument grasps at straws — section 13.29 has nothing to say about "functional" denials.  *See* 50 C.F.R. § 13.29.

14

Plaintiffs' final argument merely regurgitates the above. Plaintiffs insist that their reading of section 13 must be correct, because if not, FWS's refusal to provide administrative review of abandoned applications has "unilaterally isolated [its] actions from judicial review." (Resp. 18 (alteration added)). This makes little sense. Courts may not order agency action under 5 U.S.C. section 706(1) unless the action is "unlawfully withheld or unreasonably delayed[.]" *Id.* (alteration added). That extends only to obligations that exist under federal law, not to obligations that Plaintiffs *wish* existed. *See Vietnam Veterans of Am. v. C.I.A.*, 811 F.3d 1068, 1075–76 (9th Cir. 2016) ("The agency action must be pursuant to a legal obligation so clearly set forth that it could traditionally have been enforced through a writ of mandamus." (citation and quotation marks omitted)). As it exists, section 13 simply does not require FWS to take additional action once it determines that an application has been abandoned. *See* 50 C.F.R. § 13.11(e). Section 706(1) is not a vehicle to make it otherwise. Plaintiffs' first claim is thus due to be dismissed.

### D. Plaintiffs' Second Claim

In their second claim, Plaintiffs allege that FWS's abandonment determination exceeded FWS's authority under the APA, in violation of 5 U.S.C. section 706(2)(A). (*See* Supp. Compl. ¶¶ 86–89; Resp. 16–17, 20). According to Plaintiffs, FWS misinterpreted and misapplied its own regulations regarding the requirements for a permit under 50 C.F.R. section 15.24 and the meaning of "incomplete" under 50 C.F.R. section 13.11(e). (*See* Resp. 14–17). Plaintiffs insist that the "plain language" of the regulations did not permit FWS to deem the Application "incomplete" and "abandoned." (*Id.* 14–17). The Court disagrees. FWS's determination that the Application was "incomplete" and abandoned under section 13.11(e) was, at the very least, a "rational conclusion," sufficient to survive judicial review. *Defenders of Wildlife*, 733 F.3d at 1115 (quotation marks and citation omitted).

The Court reviews challenges to an agency's interpretation of its regulations with "all the standard tools of interpretation[,]" *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019) (alteration added), including the "canons of construction[,]" *Cremeens v. City of Montgomery*, 602 F.3d 1224, 1227 (11th Cir. 2010) (alteration added). "As a general rule of interpretation, the plain meaning of a regulation governs." *Alboniga v. Sch. Bd. of Broward Cnty. Fla.*, 87 F. Supp. 3d 1319, 1339 (S.D. Fla. 2015) (quotation marks and citations omitted). Finally, "the rules of grammar govern statutory interpretation unless they contradict legislative intent or purpose[.]" *Nielsen v. Preap*, 139 S. Ct. 954, 965 (2019) (alteration added; quotation marks and citations omitted).

Agency action survives challenge under section 706(2)(A) so long as "the agency has 'considered the relevant factors and articulated a rational connection between the facts found and the choice made.'" *Fla. Keys Citizens Coal., Inc.*, 374 F. Supp. 2d at 1126 (quoting *Baltimore Gas & Elec.*, 462 U.S. at 105); *see also In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1262 (11th Cir. 2020). This standard is "exceedingly deferential[;] . . . [t]he [C]ourt's role is to ensure that the agency came to a rational conclusion, not to conduct its own investigation and substitute its own judgment for the administrative agency's decision." *Defenders of Wildlife*, 733 F.3d at 1115 (alterations added; citations and quotation marks omitted).

According to 50 C.F.R. section 15.24(a), applications for an animal import permit must "provide the following information and such other information that the Director may require[.]" *Id.* (alteration added). The specific requirements at issue here are for:

 (i) Documents or other evidence that the bird was bred in captivity, including the name and address of the breeder, when known, the identity of the parental birds and hatch date; and

 (ii) If the applicant is not the breeder, documentation showing the bird was acquired from the breeder and a history of multiple transactions, if applicable[.]

*Id*. § 15.24(a)(3)(i)–(ii) (alteration added).  Plaintiffs "have the burden of proving" that each Parrot they seek to import satisfies the requirements.  16 U.S.C. § 4910(b).  They assert they did so here. (*See* Resp. 15–17).

First, Plaintiffs argue that FWS has misinterpreted and misapplied section 15.24(a)(3)(i). (*See* Resp. 17).  Plaintiffs read the provision to require evidence of the Parrots' parental stock and hatch date only "when known."  (*Id.*).  On this point, Plaintiffs assert that "[t]he parental stock is unknown[,]" so they interpret section 15.24(a)(3)(i) to excuse them from having to provide that information in the Application.  (R. 53 (alterations added)).

Plaintiffs' reading is incorrect.  The Court agrees with FWS — and the rules of grammar — that "when known" is as a relative clause.  (*See* Reply 11).  And, "a limiting clause" like a "relative clause . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows[.]"  *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) (alterations added); *see also Westchester Gen. Hosp., Inc. v. Evanston Ins. Co.*, 48 F.4th 1298, 1306 (11th Cir. 2022) (analyzing use of a relative clause).  Therefore, "when known" modifies and limits the preceding clause of "the name and address of the breeder."  50 C.F.R. § 15.24(a)(3)(i).

Put another way: in order for FWS to confirm that the birds were indeed captive-bred, the regulations require, for each Parrot: "the identity of the parental birds[;]" the bird's "hatch date[;]" and "[when known,] the name and address of the breeder."  50 C.F.R. § 15.24(a)(3)(i) (alterations added).  Accepting Plaintiffs' interpretation would instead have the regulation read to require "the name and address of the breeder," *and, when known*, "the identity of the parental birds and hatch date[.]"  *Id.* (alteration added).  This interpretation, if accepted, would still not help Plaintiffs make their claim.

First, the Application may still have been deficient under Plaintiffs' restructuring of section 14.24(a)(3)(i).  (*See* Reply 9–10 (describing incomplete breeder information provided)). Second, in order to avoid "strain[ing] the ordinary rules of grammar[,]" *Med. Transp. Mgmt. Corp. v. Comm'r of I.R.S.*, 506 F.3d 1364, 1369 (11th Cir. 2007) (alterations added), Plaintiffs' interpretation requires not only reorganizing the relevant language, but also reading words into the regulation that do not appear in its text.  The Court declines to do so.  FWS's reading of section 15.24 is correct, and Plaintiffs have not shown how FWS erred in requiring "the identity of the parental birds and hatch date" for each Parrot that Plaintiffs sought to import.  50 C.F.R. § 15.24(a)(3)(i).

Next, Plaintiffs contest FWS's interpretation of 50 C.F.R. section 13.11(e) (*see* Resp. 15–17), which empowers the agency to deem an application abandoned if it is "incomplete or improperly executed[.]"  50 C.F.R. § 13.11(e) (alteration added).  Plaintiffs argue that the regulation is ambiguous and FWS misinterpreted the word "incomplete" as used in section 13.11(e).  (*See* Resp. 15–17).  Because Plaintiffs provided what they believe to be sufficient evidence to assess the import permit request (*see* R. 53–67), they assert that the Application was not "incomplete," rendering FWS's determination arbitrary and capricious.

Plaintiffs take the position that section 13.11(e)'s requirements are merely a "procedural formality" rather than "a question of substantive merit."  (Resp. 17).  The Court is unable to ascertain what significance Plaintiffs attempt to show with this distinction.  As an initial matter, if the term "incomplete" — and thus the regulation — are ambiguous, then the Court *must* defer to FWS's interpretation, unless it is "plainly erroneous or inconsistent[.]"  *Kisor*, 139 S. Ct. at 2411 (alteration added; quotation marks and citation omitted).

Moreover, both sides agree that Plaintiffs' Application left something to be desired.  For its part, FWS determined that the Application was "incomplete" because Plaintiffs did not submit, for each Parrot, the required breeder statements, acquisition history, and parental stock information.  (*See* R. 51, 69).  Plaintiffs acknowledge as much in their Response, conceding that they "provid[ed] *some* of the required information, stat[ed] that some of the requested evidence was unavailable, and otherwise argu[ed] that the information provided was sufficient to favorably adjudicate the application under the applicable regulations."  (Resp. 17 (alterations and emphasis added)).  Deferring to FWS's interpretation of "incomplete" — as the Court must do, if section 13.11(e) is ambiguous, as Plaintiffs claim it is — would end the inquiry here.

That said, the Court finds the meaning of "incomplete" to be straightforward.  It means "not complete" or "unfinished."  (Resp. 16 (quoting dictionary definition)).[4]  Furthermore, FWS applied that plain meaning in at least a "rational" manner.  *Defenders of Wildlife*, 733 F.3d at 1115 (citation omitted).  Plaintiffs were required to submit all the information under section 15.24 for the Application to be "complete" and thus able to be processed by FWS.  *See* 50 C.F.R. § 15.24(a) ("Each application shall provide the following information and such other information that the Director may require[.]" (alteration added)).  Plaintiffs admit that they did not do so.  (*See* Resp. 17).

Plaintiffs justify this deficiency by explaining that the birds had been bred before the Grey Parrots' designation as an Appendix I species — and thus before they knew they should have been keeping stock of the information FWS now requires for the Application.  (*See* R. 53).  This argument creates an exception to the regulations where none exists.  *See* 50 C.F.R. § 15.24(a).  Regardless, as FWS explains, even when Grey Parrots were not an Appendix I species,

---

[4]    *Incomplete*, Merriam-Webster (last visited Dec. 15, 2022), https://www.merriam-webster.com/dictionary/incomplete.

documentation has always been required for their legal trade under CITES. (*See* Reply 10 n.4 (citing 50 C.F.R. § 23)). Indeed, some of the Parrots come from breeding facilities that Plaintiff O'Neill owns. (*See* R. 39–48). Yet, Plaintiffs provided none of this information, even after FWS prompted them to do so. (*See id.* 53).

That deficiency ends the matter, although FWS identified other problems with Plaintiffs' Application. (*See* Resp. 9–10; R. 51–52, 68). For example, section 15.24(a)(3)(ii) requires complete acquisition histories for each individual Parrot; Plaintiffs provided only some of this information. (*See* Reply 9–10 (citing 50 C.F.R. § 15.24(a)(3)(ii)); R. 57–67). Plaintiffs' submissions regarding the breeders from which the Parrots originated were similarly deficient. (*See id.*).

Simply put, FWS was obligated under its regulations to require information on the parental stock, hatch date, breeder history, and acquisition history of each Parrot. *See* 50 C.F.R. § 15.24(a). Plaintiffs did not provide that information, so FWS deemed the Application incomplete. *See id.* § 13.11(e). This conclusion is sufficiently "rational" to survive judicial scrutiny. *Defenders of Wildlife*, 733 F.3d at 1115 (citation omitted). The Court concludes that FWS acted reasonably and within its discretion. *See id.* § 13.11(e). Accordingly, Plaintiffs' second claim is due to be dismissed.

## IV. CONCLUSION

In sum, FWS has the authority to deem incomplete applications abandoned, administratively close them, and not provide those abandoned applications further administrative

CASE NO. 22-20622-CIV-ALTONAGA/Torres

review.  It properly exercised that authority with respect to the Application, and Plaintiffs have

failed to demonstrate that FWS's actions violated the APA.[5]   Accordingly, it is

     **ORDERED AND ADJUDGED** that Defendants' Motion **[ECF No. 27]** is **GRANTED**.

Plaintiffs' Amended Complaint **[ECF No. 23]** is **DISMISSED**.  The Clerk shall close the case.

     **DONE AND ORDERED** in Miami, Florida, this 21st day of December, 2022.

                                         **CECILIA M. ALTONAGA**
                                         **CHIEF UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

---

[5] Because the Court dismisses Plaintiffs' claims on these grounds, it does not address the parties' arguments concerning the potential mootness of Plaintiffs' Application, or whether Cate is an "appropriate officer" to be sued.